IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| CARLOS QUINTEROS, *et al.* | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. AW-07-0628 |
| SPARKLE CLEANING, INC., *et al.* | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

Plaintiffs Carlos Quinteros, Iliana Mejia, and Pedro Santos, for themselves and others similarly situated, filed a complaint against Defendants Sparkle Clean, Inc. ("Sparkle"), Regal Cinemas, Inc. ("Regal"), Santos Bonilla, Dionisio Rivera, Sandra Y. Vasquez, and Jose Luis Bonilla, alleging violations of the overtime pay requirements under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Maryland Wage and Hour Law, Md. Lab. & Empl. Code § 3-403(a)(8), and the Maryland Wage Payment and Collection Law, Md. Lab. & Empl. § 3-505. Currently pending before the Court and ready for judgment is Plaintiffs' Renewed Motion for Summary Judgment (Doc. No. 134).[1] A hearing on the original motion was held on March 18, 2010, and the parties discussed this Motion at the Pretrial Conference on July 22, 2010. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated below, the Court will GRANT Plaintiffs' Renewed Motion for Summary Judgment.

---

[1] Also pending before the Court is Plaintiffs' Motion for Plaintiff Iliana Mejia to be Relieved of the Obligation to Physically Present for her Deposition and Trial (Doc. No. 136). At the Pretrial Conference the parties represented that the Defendants will respond to this Motion on an expedited schedule, and thus the Court will wait for a response before ruling on this Motion.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of the case are laid out in the Court's Memorandum Opinion of January 28, 2008 (Doc. No. 27). In that Opinion the Court dismissed Defendant Regal from the suit and granted Plaintiffs' Motion for an Order Under Court Supervision Permitting Notice to Employees of their Opt-In Rights, pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") and Federal Rule of Civil Procedure 23. Only four Plaintiffs opted into the suit, and the Court dismissed all but one of these, Plaintiff Jose Luis Morales, for failure to cooperate in discovery, in an Order dated March 18, 2008 (Doc. No. 125). Thus, the Plaintiffs in the suit are the three named Plaintiffs, Carlos Quinteros, Iliana Mejia, and Pedro Santos; and the opt-in Plaintiff, Jose Morales. The Plaintiffs never moved to certify the Plaintiffs as a class under Federal Rule of Civil Procedure 23, and the Court does not see fit to treat this as a class action. Additionally, as per the discussions at the July 22, 2002, Pretrial Conference, the Court will treat the four Plaintiffs as a decertified class, and also as permissively joined under Federal Rule of Civil Procedure 20.[2] All of the counts in the Complaint remain to be tried, consisting of: failure to pay overtime under the FLSA (Count I); failure to pay overtime under the Maryland Wage and Hour Law (Count II); and failure to pay overtime under the Maryland Wage Payment and Collection Law (Count III). Now pending before the Court is Plaintiffs' renewed Motion for Summary Judgment on the issue of whether Plaintiffs were employees or independent contractors under the FLSA.

---

[2] If the parties have any objections to the Court's interpretation of FLSA class as decertified and permissively joined, they should file these objections within **five (5)** days of the entry of this Order.

## II. STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330-31 (4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

## III. ANALYSIS

Plaintiffs seek summary judgment on their claim that the Plaintiffs are employees, rather than independent contractors, under the FLSA, 29 U.S.C. § 203. The Court made a preliminary decision on this issue before discovery and determined that there was a basis to define the relationship as that of employee/employer. After discovery, the parties filed cross-motions for summary judgment on this issue. In the March 18, 2008, hearing on those motions, the Court indicated that it leaned

strongly towards finding Plaintiffs were employees, but that it would postpone its decision until the completion of the outstanding deposition of Plaintiff Pedro Santos. In the instant motion, Plaintiffs explain that the deposition of Pedro Santos did not lead to any basis for construing the employees as independent contractors. As such, Plaintiffs contend it is now appropriate for the Court to make a final determination that the employees are not independent contractors. The Court, applying the well established economic realities test, finds that the Plaintiffs were employees, rather than independent contractors, and thus the FLSA applies to them.

As the Court stated in its previous Memorandum Opinion on this issue, the determination of whether an individual is an employee or an independent contractor is a legal question under the FLSA. *Schultz v. Capital Int'l Sec. Inc.*, 466 F.3d 298, 304 (4th Cir. 2006) ("The ultimate conclusion as to whether a worker is an employee or independent contractor under the FLSA presents a legal question"); *see also Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709. 713-14 (1986). At the Pretrial Conference and in their Supplement to the Pretrial Order (Doc. No. 135), Defendants contend that the question of whether Plaintiffs are employees under the FLSA is a jury question, and cite a sole case, *Johnson v. Unified Gov't of Wyandotte County/Kansas City*, 371 F.3d 723 (10th Cir. Kan. 2004), for this proposition. The Court believes Defendants have misinterpreted this case, as this case in no way holds that the determination of employment status under the FLSA is a question for the jury. The court below in that case allowed the parties to stipulate that the jury would decide the question of whether security guards working for the Housing Authority of Kansas were employees or independent contractors. The Tenth Circuit, explaining how it transpired that a jury was presented with the employment status question, provides "[a]pparently because the district court and the parties found this rule to be vexingly difficult to apply in the practical setting of a jury trial, the

4

parties agreed to submit this issue to the jury." Clearly, this procedural scenario is inapposite to the instant case as Plaintiffs have not stipulated that the jury should decide this question. As such, the Court will decide this issue as a matter of law.

The Court has already laid out the test for determining whether a plaintiff meets the definition of "employee" under the FLSA in its Memorandum Opinion of January, 28, 2010. The Court merely summarizes the important points here to structure its analysis. The FLSA defines an *employer* as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Likewise, an *employee* is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). This definition stretches "the meaning of 'employee' to cover some [workers] who might not qualify as such under a strict application of traditional agency [or contract] law principles." *Id.*; *Nationwide Mut. Inc. Co. v. Darden*, 503 U.S. 318, 326 (1992). The Supreme Court has instructed courts to construe the terms "employer" and "employee" expansively under the FLSA. *Nationwide*, 503 U.S. at 326; *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947).

Determining whether an entity is an employer or whether an employee is covered, for the purposes of the FLSA, turns on the "economic reality" of the relationship between the employee and the putative employer. *Schultz*, 466 F.3d at 304; *see also Bartels v. Birmingham*, 332 U.S. 126, 130 (1947). The crux of the analysis is whether the worker is "economically dependent on the business to which he renders service or is, as a matter of economic [reality], in business for himself." *Id.* (internal quotations omitted). Courts have established a six-factor test to determine whether a worker is an employee or an independent contractor, based on "economic reality." These factors are:

5

      1) the degree of control that the putative employer has over the manner in which the work is performed;
      2) the worker's opportunities for profit or loss dependent on his managerial skill;
      3) the worker's investment in equipment or material, or his employment of other worker;
      4) the degree of skill required for the work;
      5) the permanence of the working relationship; and
      6) the degree to which the services rendered are an integral part of the putative employer's business.[3]

*Schultz*, 466 F.3d at 304-05; *see also Herman v. Mid-Atlantic Installation Serv. Inc.*, 164 F.Supp.2d 667, 671 (D. Md. 2000). No single factor is dispositive and a "mechanical" application of the factors is unwarranted; rather, the Court will apply these factors looking at the totality of the circumstances "to capture the economic realities of the relationship between the worker and putative employer." *Schultz*, 466 F.3d at 305; *Herman*, 164 F.Supp.2d at 671; *see also Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 66 (2d Cir.2003).

    The Court finds that because the record shows (1) Defendants exercised significant control over the schedule and work performance of the Plaintiffs; (2) Plaintiffs had little opportunity for profit or loss dependent on managerial skill; (4) Plaintiffs' work required little skill; (5) the relationship appeared to be somewhat permanent; and (6) the Plaintiffs were an integral part of the business, Defendant has not met its burden of showing the FLSA does not apply to Plaintiffs. The Court does not base its decision on the third factor—investment in equipment and employment of others—as it finds disputes of fact remain as to this one issue.

    *1. Control*

    The first *Silk* factor is the degree of control that the putative employer has over the manner in which the work is performed. Plaintiffs have presented much evidence that Defendant Sparkle

---

[3] These factors are often referred to as the "*Silk* factors," in reference to the Supreme Court case from which they

controlled and directed Plaintiffs' work activities. According to Plaintiffs, Sparkle set their schedules, instructed and directed Plaintiffs to the work sites, and directed how they would perform their cleaning activities. Plaintiffs contend that an Area Manager often directed Plaintiffs to redo their work if the cleaning was not satisfactory, and this Area Manager testified that he could fire them. Defendants, on the other hand, argue that there was no right of control, but rather, merely a right of inspection. The Court believes the evidence supports Plaintiffs' contention that Sparkle did control Plaintiffs and their work as they determined the details surrounding the projects and monitored them to ensure satisfactory performance.

### 2. *Opportunity for profit or loss dependent on managerial skill*

Plaintiffs next argue that they had no opportunity for profit or loss from their employment with Sparkle, as they were paid an hourly wage, had no profit incentive, and did not have any managerial capacity while on the job. Plaintiffs argue that this factor makes them similar to the plaintiffs in *Schultz*, where the court found the second factor weighed in the plaintiffs' favor because "[t]here [was] no evidence the agents could exercise or hone their managerial skill to increase their pay." *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 308 (4th Cir. 2006). Defendants argue that a subcontractor had an opportunity to effect his or her own profit or loss depending on whether the worker had other individuals performing services for Sparkle. Defendants also contend that a worker could affect his profit or loss by working faster and doing better work. The Court believes the Plaintiffs here did not have an opportunity to increase pay through managerial skill-building, and thus finds this factor weighs in Plaintiff's favor. The Court does not base its decision on the fact that Plaintiffs were allegedly paid by the hour, as this fact does seem to be in dispute.

---

derived. *United States v. Silk*, 331 U.S. 704 (1947).

### 3. *Investment in equipment and employment of others*

Plaintiffs argue that they did not purchase any materials or equipment to perform their jobs, while Defendants maintain that they did. Because the facts regarding this factor are in dispute, with Plaintiffs providing evidence that they did not purchase equipment, and defendants providing evidence that they did, the Court cannot consider this factor favorable for either party. Plaintiffs explain that disputes of material fact remain regarding this issue "because the 30(b)(6) witness Sandra Vasquez testified that Sparkle Cleaning maintains documents that identify what equipment is owned by which subcontractors," but never turned the information over to Plaintiffs. (Doc. No. 94 at 21.) Plaintiffs also argue that it is not reasonable to deem it possible that Plaintiffs, none of whom earned more than $19,065.00 according to their "1099s," could have purchased equipment that ranged in price from $25,000 to $250,000, according to Mr. Bonilla. They maintain that they were provided cleaning equipment and materials by Sparkle and that Sparkle trained them on this equipment. Defendants argue that all of their subcontractors are required to purchase their own equipment, which costs around $3,000. On occasion, Sparkle would allow a subcontractor to borrow Sparkles' equipment if the subcontractor's equipment was broken. The Court cannot resolve this factual dispute, and thus deems this factor neutral.

### 4. *Degree of skill required*

The fourth *Silk* factor is the level of skill required for the work. Janitorial services such as cleaning floors and carpets are not considered to be labor which requires a high degree of skill or technical expertise. Defendants contends that the Court cannot take judicial notice of this issue. But, the Court believes that in fact, it must do so under this test. *See Schultz*, 466 F.3d at 308 ("many of their tasks required little skill, for example, sorting the mail, making wake up calls, moving furniture, providing newspapers"). Accordingly, the Court observes that because the employees'

tasks were highly scripted, and did not involve much skill, this factor weighs in favor of Plaintiffs.

     5. *Permanence of the working relationship*

"The fifth factor is the degree of permanency of the working relationship. The more permanent the relationship, the more likely the worker is to be an employee." *Id.* at 308-309. Plaintiffs contend that the length of Plaintiffs' employment ranged from five months to four years in duration, and that the work with Sparkle was daily, continuous and permanent. Plaintiffs offer the Plaintiffs' pay stubs as evidence. Defendants, on the other hand, maintain that subcontractors are only used for "special projects." The court finds that the evidence on the record indicates a more permanent than temporal relationship and thus finds this factor weighs in Plaintiffs' favor.

     6. *Integral part of the business*

"The sixth (and last) *Silk* factor is the extent to which the service rendered by the worker is an integral part of the putative employer's business." *Id.* at 309. Plaintiffs contend that because Sparkle is a janitorial services company and Plaintiffs are janitors, their work was clearly integral to the business. Plaintiffs claim that Sparkle has used 600 subcontractors during the relevant time period, a number it reaches based on the list provided by Sparkle. Ms. Vasquez, Defendants' Corporate Designee, on the other hand, stated in her affidavit that Sparkle has only about 5 or 6 subcontractors at a time. She also stated that Sparkle derives 60% of its revenues from 25 employees, while Sparkle's Profit and Loss Statements show that 60% of its costs are for compensation of subcontractors. Plaintiffs attempt to refute this claim by arguing it is impossible for Sparkle Cleaning to have only 25 employees on its payroll because after the salaries of the officers are paid, the funds are insufficient to pay the salaries of the purported 25 employees. The unrefuted evidence that 60% of Sparkle's costs is compensation of subcontractors weighs heavily in favor of concluding that the

9

Plaintiffs were an integral part of the business.

## IV. CONCLUSION

Because the totality of circumstances under the economic realities test weighs in favor of finding Plaintiffs are employees, the Court will GRANT Plaintiffs' Renewed Motion for Summary Judgment. A separate Order will follow.

July 23, 2010
Date

/s/
Alexander Williams, Jr.
United States District Judge